### TRAVIS L. SMITH v. ADAMS & WICKS.
#### No. 169.

1. **Innocent Purchaser — Notice.** — Two persons having agreed to purchase a tract of land together, one to furnish the money and the other to buy, each to have a half-interest in the land, notice to the purchasing partner of facts tending to prove the existence of a prior unrecorded deed is notice to the other partner.

2. **Same.**—Although pursuit of inquiry in accordance with the notice of facts in his possession might not have led the purchasing partner to the discovery of the unrecorded deed, because that was not found until after the institution of this suit, yet by such inquiry he could have ascertained the exact chain of title claimed by plaintiffs, and he was not entitled to speculate upon their present inability to produce the deed. There was sufficient knowledge of facts to require him to take notice of the true state of the title.

3. **Harmless Error in Admission of Evidence.**—Notice of the unrecorded deed being otherwise shown, the admission in evidence of a judgment in a suit between the plaintiffs and third parties, wherein their chain of title was recited, was harmless error.

4. **Partition Deed.**—A deed neither acknowledged, recorded, nor witnessed, may be a good partition deed, sufficient to support the plaintiff's cause of action.

APPEAL from Brazoria.   Tried below before Hon. WILLIAM H. BURKHART.

*A. R. Masterson,* for appellant.—1. The judgment between the Mabry family, the Black family, Mary White, and a man named Moore, as plaintiffs, and Adams & Wicks, as defendants, could only bind the parties to that suit, and could not affect appellant's title, who was not a party.

Lumpkin v. Adams & Wicks, 74 Texas, 102; Hall v. Hall, 11 Texas, 547; Pleasants v. Duncan, 47 Texas, 344, qualifying Hall v. Hall; 64 Texas, 205, 247, 696; 68.Texas, 634; Morrison v. Lofton, 44 Texas, 17, 24, 169; 49 Texas, 228.

As to cases where recitals in chain of title is notice: 57 Texas, 259; 46 Texas, 114; 48 Texas, 436; 49 Texas, 62; 50 Texas, 323; 55 Texas, 12, 109, 517; 56 Texas, 466; 60 Texas, 194.

2. The knowledge of W. S. Brooks of the claim of appellees to the land, imparted to him by E. H. Wilson before appellant agreed with Brooks to become a purchaser, was not the knowledge of appellant, and could not affect appellant, unless Brooks had communicated to appellant such knowledge or information. Rippetoe v. Dwyer, 60 Texas, 310; Mueley v. Zeigler, 23 Texas, 92.

3. The failure of appellant to investigate the title, even if the surrounding circumstances were sufficient to put an ordinarily prudent man upon inquiry, could not determine his rights, unless such inquiry would reasonably lead to the discovery of the Towns deed; and the charge should have been so qualified. Slayton v. Singleton, 72 Texas, 214.

*Eugene J. Wilson*, for appellees.—1. The judgment of Adams & Wicks v. Heirs of Francis Moore, reciting claim to title, was constructive notice, or presumptive notice at any rate, competent to put any prudent man on inquiry as to true state of title. Wade on Notice, secs. 308–310, 324; Lumpkin v. Adams & Wicks, 74 Texas, 103.

2. Notice of an unrecorded deed to one interested with a subsequent purchaser in the purchase, but whose name does not appear in the subsequent conveyance, is notice to the subsequent purchaser to whom the conveyance is made. Littleton & Clay v. Giddings, 47 Texas, 109–119; distinguished, not overruled, by Rippetoe v. Dwyer, 65 Texas.

3. Appellant is chargeable with and affected by all the facts of which Brooks had notice, with whom he deliberately engaged to purchase from parties out of possession—Town's heirs—a valuable half-league of land, which Brooks at the time told him "the heirs from whom he proposed to buy for a trifling sum did not know they owned." He became the associate of and constituted Brooks his agent in the purchase. It makes no difference when Brooks was put upon notice, whether before the relation was established between Brooks and Smith or not. Littleton & Clay v. Giddings, 47 Texas, 109–119; Wade on Notice, 22, pars. 31–33; see especially Wade on Notice, 2 ed., par. 689, p. 395, as to notice to Brooks before relation established between Brooks and appellant.

GARRETT, CHIEF JUSTICE.—Appellees brought this suit, in the District Court of Brazoria County, in trespass to try title, to recover about 2000 acres of land, a part of the Francis Moore headright, west of Choc-

olate Bayou, in said county.   Defendant pleaded not guilty, and that he was purchaser of the land in good faith, without notice of plaintiffs' claim. Trial was had by jury, and verdict and judgment were rendered in favor of the plaintiffs.

*Conclusions of Fact.*—1.  R. J. Towns is admitted to be common source.
2.  Plaintiffs' title is deraigned as follows:

(1)  Deed of partition, dated June 12, 1844, between John W. Harris, E. M. Pease, and R. J. Towns, of lands owned by them jointly, in which Towns took 600 acres out of another grant, and Harris and Pease took the land described in plaintiffs' petition, that portion of the Francis Moore league lying west of Chocolate Bayou, containing 2000 acres, more or less; Pease getting the upper half of the tract, and Harris getting the lower half.   This deed was not witnessed by any one, and was not acknowledged by the grantors.   It was found after the institution of this suit among the papers of R. J. Towns, deceased.   It was recorded May 26, 1891.

(2)  Deed from John W. Harris to E. M. Pease, dated December 7, 1852, witnessed by Robert H. Chinn and Chesley Stringfellow.   It is not acknowledged by Harris nor proven up by either of the witnesses; but since the institution of this suit has been proven for record and recorded. It is on the same sheet of paper with the partition deed.

(3)  Deed from E. M. Pease to Asa Mitchell for the 2000 acres above mentioned.   It is dated November 30, 1847, and is a quitclaim deed, in consideration of $500.   It was recorded November 30, 1847.

(4)  Will of Asa Mitchell, probated in Bexar County, December 28, 1865, by which R. H. Beldin, W. J. Joyce, and Hiram Mitchell were appointed independent executors.

(5)  Partition deed from executors of Asa Mitchell to Wallace Mitchell, dated July 31, 1867, recorded in record Brazoria County, October 9, 1872, conveying to him all of the 2000 acres tract.

(6)  Deed from Wallace Mitchell to H. B. Adams and E. D. L. Wicks, dated June 14, 1875, recorded in record of deeds of Brazoria County, book N, page 702; date of record not shown.

3.  Plaintiffs also introduced in evidence a judgment of the District Court of Brazoria County, in the suit of heirs of Francis Moore against Adams & Wicks, in favor of the defendants, Adams & Wicks, rendered January 14, 1887, for the land in controversy, which contained a recital of the title of Adams & Wicks from Francis Moore down to them.

4.  The defendant, T. L. Smith, purchased the land from the heirs of R. J. Towns, who conveyed to him by deed without warranty, dated July 20, 1889, for a consideration of $300.   His deed was recorded August 30, 1889.

5. Plaintiffs were the real owners of the land by consecutive chain of title from R. J. Towns down to them.

6. Defendant bought without actual notice of plaintiffs' title, or that the land had ever been conveyed by Towns; but his purchase was for himself and one W. S. Brooks jointly, and was made through said Brooks.

7. Brooks, who had learned that there was no deed of record to Towns for the land, mentioned the matter to Eugene J. Wilson. The latter told him of plaintiffs' claim; that they owned the Towns title, and that Brooks could find out the exact status of the title by applying to Adams & Wicks. He advised Brooks not to buy. After this Brooks entered into an agreement with the defendant, by which the latter should furnish the purchase money, $300, and that Brooks should buy the land for their joint account.

8. Brooks conducted the negotiations through Fred Carleton, the husband of one of the heirs, and during the time of the negotiations, which were conducted in behalf of himself and Smith, he knew of the claim of plaintiffs, and told Carleton, as an inducement why he should sell for $300, that he had been told and was satisfied that there was in existence an unrecorded deed from Towns to some one, and that it would be useless to try and recover the land. In making these statements he was acting under the agreement previously made between him and the defendant.

9. As before stated, the deed was made to T. L. Smith for the land, but it was understood between Smith and Brooks that the latter owned a half-interest. Brooks did not tell Smith what he had learned from Wilson.

10. Since this suit was brought, the defendant, Smith, at the direction of Brooks, who compromised with plaintiffs, conveyed to them Brooks' one-half interest in the land.

*Conclusions of Law.*—Brooks was not only the partner of the defendant in the purchase of the title of the Towns heirs to the land, but was also his agent in negotiating for the purchase thereof. The evidence is uncontradicted, and comes from Brooks himself, that at the time he was conducting the negotiations he was mindful of the facts which he had learned from Wilson respecting the claim of plaintiffs, and made use of the same in order to cheapen the price for the title. It is very clear that Smith is affected with the notice that Brooks had.

But it is contended, that if Brooks had pursued an inquiry in accordance with the notice of facts in his possession, it would not have resulted in the discovery of a deed from Towns, because that deed was not found until after the institution of this suit. By such inquiry he could have ascertained the exact chain of title as claimed by the plaintiffs; and because they may have been unable to produce the deed from Towns or show its record, defendant will not be allowed to speculate upon their

present inability to do so. There was a sufficient knowledge of facts to require him to take notice of the true state of the title.

Appellant objected to the admission of the judgment in the case of Heirs of Moore v. Adams & Wicks, and has assigned the same as error. Such error was immaterial, however, because, from the uncontradicted evidence, notice to the defendant was shown, independently of the judgment. We may infer also from the record, that there was an agreement by which the judgment was admitted without objection upon the question of notice.

Portions of the charge of the court are complained of, as well as the refusal of certain instructions asked by the defendant. Since it appears from the uncontradicted evidence, that no other judgment could have been rendered in the case, it becomes immaterial whether or not there was error in this respect. Yet we are of the opinion, that the charge was quite as favorable to the defendant as he could have asked.

While the deed of partition between Towns, Harris, and Pease was neither witnessed nor acknowledged by the parties thereto, still it was an acknowledgment that Towns held the lands in trust for himself and Harris and Pease, and was a good partition thereof. It vested an equitable title in the several parties for their respective interests, sufficient to support the plaintiffs' cause of action; and although it was found among the papers of Towns' estate, there could be no presumption against the delivery of the instrument, because Towns himself was entitled to the possession thereof as much as either Harris or Pease.

We find no error in the judgment of the court below, and it will be affirmed.

*Affirmed.*

Delivered May 18, 1893.

Writ of error to Supreme Court refused October 13, 1893.